IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIRK B. MATTHEWS | * |
| | * |
| v. | *   Civil Case No. ELH-13-1720 |
| | * |
| COMMISSIONER, SOCIAL SECURITY | * |
| | * |
| ************ | |

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Kirk B. Matthews, who is appearing *pro se,* has not filed a motion for summary judgment. I have considered the Commissioner's pending motion for summary judgment, which Mr. Matthews did not oppose.[1] [ECF No. 16]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted.

Mr. Matthews applied for Supplemental Security Income on June 8, 2009, alleging a disability onset date of July 4, 2008. (Tr. 206-11). His claims were denied initially on September 21, 2009, and on reconsideration on March 19, 2010. (Tr. 112-17). An Administrative Law Judge ("ALJ") held a hearing on February 4, 2011. (Tr. 23-48). Subsequently, the ALJ denied benefits to Mr. Matthews in a written opinion dated May 16, 2011. (Tr. 99-105). The Appeals Council remanded the case to the ALJ on October 5, 2011. (Tr. 110-

---

[1] On February 25, 2014, the Court sent Mr. Matthews a Rule 12/56 letter advising him of the potential consequences if he did not file an opposition to the Commissioner's motion. [ECF No. 17].

11). On May 21, 2012, the ALJ held a second hearing in this matter. (Tr. 49-91). After the second hearing, the ALJ again wrote an opinion denying benefits to Mr. Matthews on May 25, 2012. (Tr. 8-22). The Appeals Council then denied review, (Tr. 1-5), making the ALJ's 2012 decision the final, reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Matthews suffered from the severe impairments of seizure disorder and degenerative joint disease in his left shoulder. (Tr. 13). Despite these impairments, the ALJ determined that Mr. Matthews retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the additional limitation that he can do work that frequently requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes and scaffolds), and he should avoid all exposure to hazards. He can only lift 10 pounds with his left hand, and perform jobs [that] do not require him to reach overhead with his left hand.

(Tr. 14). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Matthews could perform, and that he was not therefore disabled. (Tr. 17).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Mr. Matthews's favor that he had not engaged in substantial gainful activity since the date of his application. (Tr. 13). At step two, the ALJ found

the severe impairments of seizure disorder and degenerative joint disease of the left shoulder. *Id.* The ALJ also assessed Mr. Matthews's diabetes mellitus, but found that it was not severe because it is "controlled by diet." *Id.* A thorough review of the record does not demonstrate any functional limitations relating to diabetes mellitus.

At step three, the ALJ noted that no state agency physician or psychologist, or treating or examining physician or psychologist, has concluded that any applicable Listings have been met or medically equaled. (Tr. 13-14). The ALJ further confirmed that after reviewing the records, he reached the conclusion that no Listings had been met. *Id.* Although better practice would be to specifically identify any potentially applicable Listings and cite evidence establishing why they are not met, I find harmless error in this case, as the evidence does not establish that all of the criteria were met for any particular Listing.

At step four, the ALJ provided a summary of Mr. Matthews's testimony. (Tr. 14). The ALJ also analyzed the medical evidence derived from medical source statements from an examining physician, Dr. William Jones, (Tr. 15, 293-97, 364-67); from treatment in an emergency room in August, 2009, (Tr. 15, 324-25); and from regular treatment records at Owensville Primary Care, (Tr. 15, 331-33). Moreover, the ALJ noted treatment records, including an MRI, from the Orthopaedic and Sports Medicine Center in November, 2009. (Tr. 15, 312-15, 328, 356-59). Finally, Mr. Matthews underwent a consultative examination in March, 2011, and the ALJ summarized the results of that examination. (Tr. 15-16, 371-72). The ALJ further noted that treatment records in 2012 reflected no recent seizures, and also noted the absence of documentation supporting the frequency of seizures alleged by Mr. Matthews. (Tr. 16, 374-75, 385-86). The ALJ further explained his assignments of weight to the opinions of Dr. Jones, the examining physician, noting that the opinions should not be afforded controlling weight due to the fact that one of the opinions was completed on the date of the initial visit, and

both forms indicate that Dr. Jones performed no diagnostic tests and was unable to opine on Mr. Matthews's precise restrictions without further evaluation from specialists. (Tr. 16, 293-96) ("Patient presents for 1st visit for work evaluation. Unable to evaluate much of status."); (Tr. 364-67) ("Pt presents for re-evaluation after 18 mo interval . . . Still needs to see neurologist & ongoing care of orthopedist"). The ALJ assigned "great weight" to the consultative examination, which limited Mr. Matthews's ability to use his left extremity to lift and reach overhead. (Tr. 16). The ALJ also cited an adult function report indicating that Mr. Matthews helps care for his parents and is able to do some laundry, yard work, and prepare meals. (Tr. 16, 241-48). The function of this Court is not to review Mr. Matthews's claims de novo or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman*, 829 F.2d at 517; *see also* 42 U.S.C. § 405(g). Under that standard, and in light of the evidence cited by the ALJ, I recommend that the ALJ's RFC assessment be affirmed. The ALJ's RFC assessment took into account the limitations that were readily established by the evidence, such as the inability to climb ladders, ropes, and scaffolds and to be exposed to workplace hazards due to seizures, and the inability to lift heavy weight or reach overhead with the left hand due to the shoulder impairments. (Tr. 14).

The ALJ also appropriately completed step five of the sequential evaluation. The ALJ took testimony from the VE regarding whether Mr. Matthews could perform his past relevant work, and determined that he could not. (Tr. 81-82). The ALJ then posed a series of hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 82-90). Ultimately, the ALJ determined that Mr. Matthews's

RFC matched one of the hypotheticals he had posed. (Tr. 14, 87-88). The VE cited two jobs (cashier and cafeteria attendant) in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 17). The ALJ's step five determination, therefore, was supported by substantial evidence.

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 16]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed.R.Civ.P. 72(b)(2) and Local Rule 301.5.b.


Dated: April 11, 2014                                     /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge